# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00754-SCT

*CHRISTOPHER DERAY SLATER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/6/97 |
| TRIAL JUDGE: | HON. ANDREW CLEVELAND BAKER |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID G. HILL |
| | DAVID L. MINYARD |
| | MAUIE L. WHITE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| | CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | ROBERT WILLIAMS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 1/14/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/8/99 |

**BEFORE PITTMAN, P.J., SMITH AND MILLS, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. The appellant, Christopher Deray Slater (hereinafter Slater) was indicted on July 11, 1996, by a Tate County, Mississippi, grand jury for murder and aggravated assault in violation of Miss. Code Ann. §§ 97-3-19(1)(a) and 97-3-7(2)(b). The case was tried on April 14-17, 1997, the Honorable Judge Andrew C. Baker presiding. After due deliberation the jury found Slater guilty of murder and not guilty of aggravated assault. Slater was sentenced to life in the custody of the Mississippi Department of Corrections. Post-trial motions were heard and denied by the trial court. Slater timely noticed this instant appeal.

## STATEMENT OF THE FACTS

¶2. Slater and two friends armed themselves and went driving around on Saturday, March 2, 1996. They spotted a car belonging to someone they wanted to catch up with and talk to. Slater followed this car up Highway 51 and then passed the victim's car, turned around in the highway ahead of the victim's still moving car, thereby forcing the victim's car to stop or else hit Slater's car - effectively sitting sideways across the highway. Slater then pulled alongside the victim's car, now stopped in the highway, and both Slater and one of Slater's passengers began shooting into the victim's stopped car. Chester Newson, the victim, was struck in the head by one of the bullets fired by either Slater, or his co-indictee, Frank Howard, and died.

¶3. In this appeal, Slater raises three assignments of error. They are as follows:

**I. THE TRIAL COURT'S EXCLUSION OF HOWARD'S SPONTANEOUS CONFESSION THAT HE HAD KILLED SOMEONE, DENIED SLATER A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS, BY DEPRIVING HIM OF THE ONLY EVIDENCE AVAILABLE TO SUPPORT HIS TESTIMONY THAT HOWARD KILLED CHESTER NEWSON AFTER HE HIMSELF HAD ABANDONED ANY CRIMINAL INTENT AND STARTED TO LEAVE THE SCENE.**

**II. THE COURT'S REFUSAL TO INSTRUCT THE JURY ON ABANDONMENT AND ON ACCESSORY AFTER THE FACT DEPRIVED HIM OF HIS RIGHT TO HAVE HIS THEORY OF DEFENSE SUBMITTED TO THE JURY IN VIOLATION OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS.**

**III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT CONSTRUCTIVELY AMENDED THE INDICTMENT, IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS, BY INSTRUCTING THE JURY ON "DEPRAVED HEART" MURDER WHEN THE INDICTMENT ONLY ACCUSED CHRIS OF "DELIBERATE DESIGN."**

## LEGAL ANALYSIS

**I. THE TRIAL COURT'S EXCLUSION OF HOWARD'S SPONTANEOUS CONFESSION THAT HE HAD KILLED SOMEONE, DENIED SLATER A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS, BY DEPRIVING HIM OF THE ONLY EVIDENCE AVAILABLE TO SUPPORT HIS TESTIMONY THAT HOWARD KILLED CHESTER NEWSON AFTER HE HIMSELF HAD ABANDONED ANY CRIMINAL INTENT AND STARTED TO LEAVE THE SCENE.**

¶4. In this case, Frank Howard, a co-indictee not on trial here, had previously made a statement which was overheard by Darrell Goins. Slater's defense counsel wished to have Darrell Goins testify in this case as to what he heard Frank Howard say. The State objected to this testimony as being inadmissible hearsay evidence. Slater argued that this testimony was admissible hearsay under Miss. Rules of Evidence 804(b)(3).

¶5. The State argued that this testimony was not admissible under M.R.E. 804(b)(3) because Frank Howard had not been subpoenaed by Slater to testify. The State conceded that it was possible that Frank Howard would assert his Fifth Amendment right against self-incrimination and refuse to testify, but until he was called upon to testify, he was not unavailable to testify as required by M.R.E. 804(b)(3).

¶6. This Court held in **Baine v. State**, 606 So.2d 1076, 1078 (Miss. 1992), that "[u]nder this Court's standard of review, the admissibility of evidence rests within the trial court's discretion." **Id.** (citing **Wade v. State**, 583 So.2d 965, 967 (Miss. 1991)). The trial judge found that the statement did not fall into the M.R.E. 804(b)(3) exception or any other hearsay exception. Slater was then allowed the opportunity to make a proffer of what Darrell Goins' testimony would have been had he been allowed to testify. At that point, Slater's counsel stated the following into the record:

> Mr. Goins, if called as a witness, will testify that on or about December 5, 1996, he had an occasion to encounter Frank Howard and that on that occasion there was some dispute between Darrell Goins and Frank Howard as to whose cousins had been shoving whose cousins. And Frank Howard stated, while putting his hand into his coat pocket, to Mr. Goins that 'I busted a cap in one motherfucker and I will bust another cap in another motherfucker.'

> Mr. Goins would further testify that the phrase 'bust a cap' is common street language and on the street that phrase means having shot somebody . . . .

¶7. Slater argues that the trial court abused its discretion when it refused to recognize Howard's statement as a statement against interest, admissible under M.R.E. 804(b)(3). This Court has held that,

> [I]t was reversible error to refuse to permit the defendant to call a witness to the stand and question him in the presence of the jury even though it had been demonstrated that the witness would refuse to answer most of the questions on grounds of self-incrimination.

**Hall v. State**, 490 So.2d 858, 859 (Miss. 1986). In the present case the same is true. Slater could have called Howard to the stand to testify even if he suspicioned that he would assert his Fifth Amendment privilege against self-incrimination. This is significant because the unavailability of the declarant is part of the M.R.E. 804(b)(3) hearsay exception.

¶8. Mississippi Rule of Evidence 804(b)(3) states:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is **<u>unavailable</u>** as a witness:

> (3) Statement Against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

(emphasis added).

¶9. In this case Frank Howard was not proven unavailable. He was never subpoenaed to appear and testify during this trial by either side. It is not enough to presume or suspicion that someone will assert his Fifth Amendment privilege against self-incrimination and refuse to testify. They must be called to the stand and there refuse to testify before they become unavailable due to invoking the Fifth Amendment.

¶10. Since Frank Howard was not shown to be unavailable to testify, the trial judge correctly refused to allow the hearsay testimony of Mr. Goins. This assignment of error has no merit.

### II. THE COURT'S REFUSAL TO INSTRUCT THE JURY ON ABANDONMENT AND ON ACCESSORY AFTER THE FACT DEPRIVED HIM OF HIS RIGHT TO HAVE HIS THEORY OF DEFENSE SUBMITTED TO THE JURY IN VIOLATION OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS.

**A. Abandonment Instruction**

¶11. Slater wished to offer proposed jury instruction D-8 which was an abandonment instruction at his trial. The proposed instruction read as follows:

> If you find from the evidence that Frank Howard shot and killed Chester Newson, Jr., under the circumstances not amounting to justifiable homicide, legally excusable homicide, or manslaughter and that at one point Christopher Slater shared Howard's criminal intent to effect Newson's death, but that he later freely and voluntarily, and not because of some outside cause, abandoned that intent before either his or Howard's acts had reached the point where nothing but the intervention of a force beyond either Slater's or Howard's control could have prevented Newson's death, then you shall find Christopher Slater not guilty of Count One of the Indictment.

> Slater is not required to proved abandonment beyond a reasonable doubt. Rather the State has the burden of proving beyond a reasonable doubt and to your unanimous satisfaction that there was no abandonment.

The trial judge refused giving this instruction stating:

> I cannot give D-8. The evidence that's before this jury is that this Defendant shot into this vehicle. It is stated that he shot six times and it's stated he don't [sic] know how many times he shot, so to me, that's not abandonment of a crime, or intent to commit a crime. I could not, under the evidence of this case, give that instruction . . . .

¶12. Slater claims that as a result of the trial judge refusing his abandonment instruction, he has been denied his right to a fundamentally fair trial under both the Mississippi and the United States Constitutions. Slater points to this Court's decision in ***Hester v. State***, 602 So.2d 869, 872 (Miss. 1992) (citations omitted), wherein this Court held:

> In a homicide case, as in other criminal cases, the court should instruct the jury as to theories and grounds of defense, justification, or excuse supported by the evidence, and a failure to do so is error requiring reversal of a judgment of conviction. Even though based on meager evidence and highly unlikely, a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court. Where a defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error.

¶13. Using the test from ***Hester***, as applied to the facts in the present case, we must consider three prongs: (1) did Slater's proffered instruction, D-8, have an evidentiary basis, (2) did it properly state the law, and (3) was it Slater's only instruction which presented his theory of the case?

¶14. Since prong one is not satisfied, we will not discuss the other two prongs. Jury instruction D-8, the abandonment instruction, has no evidentiary support in the record. In Slater's brief he argues that though he admitted shooting into the victim's car that night; a passenger in his car, Frank Howard, was also shooting into the victim's car and Frank Howard continued to shoot after Slater had finished shooting and had thrown his gun down in the car. However, Slater's own testimony belies the fact that Frank Howard's later shots were the lethal ones. No testimony was presented in the record as to which shot killed Chester Newson. The following excerpts from Slater's own testimony bolsters the trial judge's decision to refuse the abandonment instruction:

> Mrs. Lamar: Which one of these shots killed Chester Newson?
>
> Slater: I don't know but it wasn't my shot.
>
> Mrs. Lamar: If you don't know which one it was, how do you know it wasn't your shot?
>
> Slater: Because I wasn't shooting at him.
>
> Mrs. Lamar: But you don't know which shot killed Chester Newson, do you?
>
> Slater: No ma'am.
>
> * * *
>
> Mrs. Lamar: You don't know which bullet killed Chester Newson, do you? Do you?
>
> Slater: Which one, what bullets?
>
> Mrs. Lamar: Any of those bullets that were flying around out there that night, Chris. You cannot tell us whether it was the first bullet or the last bullet can you?
>
> Slater: What first bullet?
>
> * * *

Self-defense is a complete defense. Slater testified during the trial that he was acting purely in self-defense:

> Slater: While I was shooting, I was - - I had reacted, I guess. I was acting in self-defense and by that time, I was pulling off and I throwed [sic] the pistol back in the car . . . .

¶15. According to Slater's own testimony, he was acting purely in self-defense. Therefore, he had no criminal intent to abandon. He had no need for an abandonment instruction. Slater never testified that he shot with criminal intent. All of his testimony was carefully crafted to belie this criminal intent and to shape his conduct as that of self-defense.

## B. Accessory After the Fact Instruction

¶16. Slater also argues that had the jury been permitted to consider whether he had voluntarily abandoned any criminal intent he might have had, it would have also been required to consider whether his stopping to allow Howard (who allegedly had jumped out of the car while firing into the victim's car) a means of escape from the crime scene, made him an accessory after the fact. This Court held in *Chase v. State*, 645 So.2d

829, 851 (Miss. 1994) that,

> An accessory after the fact is a person assisting one who has completed the commission of a felony to avoid being apprehended, arrested, convicted, etc.

*Id.* (quoting *Gangl v. State*, 539 So.2d 132, 136 (Miss. 1989)).

¶17. Based on Slater's own testimony, the trial judge was correct in refusing an accessory after the fact instruction. Slater testified at his trial that he was shooting into the victim's car. Slater also testified that Frank Howard had gotten out of the car while he was shooting and Slater kept the car creeping along and then Slater heard Howard yelling, "[m]an, don't leave me," so Slater slowed down and let Howard back into the car.

¶18. From Slater's own testimony it is clear that he participated in the shooting, his partner continued to shoot, no one knows which bullet killed Chester Newson, and Slater assisted his partner in the getaway. Slater is a principal actor and is just as guilty of Chester Newson's murder whether the fatal bullet was fired from his or his partner's gun. This assignment of error is without merit.

### III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT CONSTRUCTIVELY AMENDED THE INDICTMENT, IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS, BY INSTRUCTING THE JURY ON "DEPRAVED HEART" MURDER WHEN THE INDICTMENT ONLY ACCUSED CHRIS OF "DELIBERATE DESIGN."

¶19. Slater admits that this Court has disposed of this very issue in *Catchings v. State*, 684 So.2d 591 (Miss. 1996), but urges this Court to overrule that holding. This Court declines that invitation. This Court has held that:

> As a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life. Our cases have for all practical purposes coalesced the two so that Section 97-3-19(1)(b) subsumes (1)(a).

*Mallett v. State*, 606 So.2d 1092, 1095 (Miss. 1992) (citations omitted). This assignment of error is, therefore, also without merit.

¶20. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**